IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION, | * | |
| | * | |
| Plaintiff, | | |
| | * | Case No. 1:25-cv-2319 |
| v. | | |
| | * | |
| MARYLAND CARE, INC. d/b/a MARYLAND PHYSICIANS CARE, | * | |
| | | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COUNTS II-IV OF THE COMPLAINT AND REQUEST FOR HEARING**

Defendant Maryland Care, Inc. d/b/a Maryland Physicians Care ("MPC"), by and through counsel Rifkin Weiner Livingston LLC, hereby submits this Memorandum in support of its Motion to Dismiss Plaintiff University of Maryland Medical System Corporation's ("UMMS") Complaint. UMMS fails to allege plausible claims for relief in Counts II-IV.

**INTRODUCTION**

This action is a dispute between a regional health care system and a Maryland Medicaid Managed Care Organization. Plaintiff, UMMS alleges that it provided medical services to individuals enrolled in Maryland Medicaid and who are members of Defendant, MPC for which MPC did not reimburse UMMS to its satisfaction. Disagreeing with the reasons for MPC's denials of reimbursement, UMMS filed suit asserting not just a claim for breach of contract, but also causes of action under various federal and state Medicaid statutes and regulations, each seeking the same relief: that is, increased reimbursement for medical services.

In addition to federal and state statutes and regulations, the Parties' relationship is

governed by a written agreement—the Maryland Medicaid HealthChoice Program, Participating Health Provider Agreement dated January 1, 2018 ("PHP Agreement").[1] Under the PHP Agreement, UMMS agreed to provide medically necessary health services to MPC's members, and MPC would reimburse UMMS under terms and conditions set forth in the agreement. In its Complaint, UMMS asserts four causes of action, all of which allege MPC failed to reimburse UMMS fully for the medical care and services UMMS provided to MPC's members. However, as set forth herein, UMMS's Complaint fails to state a claim for unjust enrichment (Count II), declaratory relief (Count III) and injunctive relief (Count IV).

## BACKGROUND

Maryland participates in the comprehensive federal program Medicaid through its HealthChoice program.[2] MPC is a Medicaid managed care organization[3] ("MCO") that provides health care benefits to Maryland Medicaid recipients pursuant to its contract with the Maryland Department of Health. See https://health.maryland.gov/mmcp/healthchoice/pages/home.aspx (last accessed on July 16, 2025 at 1100 AM), Compl. ¶ 8.

---

[1] A copy of the PHP Agreement is attached hereto as Exhibit 1. UMMS cites extensively to the PHP Agreement in its Complaint. See generally Complaint. As the document forms the basis of Count I of the Complaint, attaching it hereto does not convert it to summary judgment. Makowski v. Bovis Lend Lease, Inc., 2011 U.S. Dist. LEXIS 27883, *5 (D. Md. 2011)(finding that construction contract and other documents "referred to in the Complaint, central to [Plaintiff's] claims … are appropriately considered by this Court" on motion to dismiss); Rogers v. LJT & Assocs., 2015 U.S. Dist. LEXIS 179105, *5 (D. Md. 2015)("In ruling on a motion to dismiss, the Court may consider documents referred to and relied on in the Complaint. HQM, Ltd. v. Hatfield, 71 F. Supp. 2d 500, 502 (D. Md. 1999). LJT attached the employment contract and NDA to its Motion to Dismiss, and therefore, the Court may properly consider those documents in resolving the motion."); and Maryland Minority Contractor's Ass'n v. Maryland Stadium Auth., 70 F. Supp. 2d 580, 592 (D. Md. 1998)("When a plaintiff's complaint relies on documents not provided with that complaint, the defendant may on a motion to dismiss provide them for the court's consideration. 'Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.' Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).").
[2] See https://health.maryland.gov/mmcp/healthchoice/pages/home.aspx (last accessed on 7/16/25 500 PM EST).
[3] A "managed care organization" is defined at 42 U.S.C. § 1396b(m)(1)(A) and § 15-101(e) of the Health-General Article ("HG"), Annotated Code of Maryland, and includes corporations that are "authorized to receive medical assistance prepaid capitation payments." HG § 15-101(e)(2)(i); see also Medicaid § 1115, 42 U.S.C. § 1315, pursuant to which CMS authorizes the adoption of Managed Care Models as opposed to fee for service models by States under Medicaid.

"Medicaid is a federal program that subsidizes the State's provision of medical services to 'families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services.' [42 U.S.C.] §1396-1. Like other Spending Clause legislation, Medicaid offers the States a bargain: Congress provides federal funds in exchange for the State's agreement to spend them in accordance with congressionally imposed conditions." Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 323 (2015); see 42 U.S.C. §§ 1396 - 1396v.

"State participation in Medicaid is voluntary. [Dep't of Health & Mental Hygiene v.] Campbell, 364 Md. [108,] 112 [2001]. But, once a state opts to participate, it must operate its program in compliance with federal statutory and regulatory requirements. 42 U.S.C. 1396a(a)(1). A participating state must develop a state Medicaid Plan for the provision of services that the state intends to provide under the program, which is reviewed by the Health Care Financing Administration ('HCFA'). 42 U.S.C. § 1396a. Once HCFA approves the plan, the state is eligible for federal funding. Campbell, 364 Md. at 112. When the state implements a plan for medical assistance, the plan becomes mandatory. 42 U.S.C. § 1396a(a)(1). Maryland has opted to participate in the Medicaid program through the Maryland Medical Assistance Program. Campbell, 364 Md. at 112. The program is administered by the Department and overseen at the federal level by the Department of Health and Human Services ('HHS')."[4] Reese v. Dep't of Health & Mental Hygiene, 177 Md. App. 102, 108-09 (2007); see Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990); 42 U.S.C. §1396a; Children's Hosp. Ass'n of Tex. v. Azar, 933 F. 3d 764, 767 (D.C. Cir. 2019) ("States implement their own Medicaid plans, subject to the federal government's review and approval.").

---

[4] HCFA is now known as the Centers for Medicare and Medicaid Services ("CMS"). CMS is a federal agency within the United States Department of Health and Human Services.

"The entire thrust of the medical assistance program is to provide the necessary amount of medical care to low-income persons while minimizing expenditures by the State." Roberts v. Total Health Care, 349 Md. 499, 523-24 (1998). "Treating the indigent proves costly even for hospitals that receive Medicaid payments. Indeed, not all hospital services are covered by Medicaid; not all costs associated with covered services are allowed by Medicaid; and Medicaid does not fully reimburse hospitals for all allowable costs associated with covered services." Id. at 767-68.

The Medicaid Act contains a "freedom-of-choice" provision that allows beneficiaries to receive healthcare services from participating, qualified providers of their choice. See 42 U.S.C. §1396a(a)(23). States may seek a waiver of the "freedom-of-choice" provision to provide healthcare services to Medicaid beneficiaries through MCOs (such as MPC) that in turn pay providers directly for services. 42 U.S.C. § 1396n(b). Maryland sought and obtained a §1115 waiver, which was approved by CMS.[5] Although Medicaid beneficiaries enrolled in managed care plans receive care from providers designated by the MCO, emergency care providers cannot be so restricted. MCOs are responsible for reimbursing certain "emergency services," medical screening services, and other medically necessary services regardless of whether the provider has a contract with the MCO or not. 42 C.F.R. § 438.114. Under certain circumstances "ancillary services" are also reimbursed. 42 C.F.R. §§ 416.164(b) & 416.2.

Disagreeing with the basis for MPC's denials of portions of UMMS' claims for reimbursement, UMMS filed suit asserting causes of action under various statutes and

---

[5] "The Centers for Medicare and Medicaid Services (CMS) has authorized the Maryland Department of Health's (the Department) existing §1115 demonstration, known as the HealthChoice demonstration, through December 31, 2026. The HealthChoice demonstration authorizes Maryland's managed care program, known as HealthChoice, as well as other innovative programs." https://health.maryland.gov/mmcp/pages/1115-healthchoice-waiver-renewal.aspx#:~:text=The%20Centers%20for%20Medicare%20and,Conditions%20can%20be%20found%20here (last accessed on 7/16/25 505 PM EST).

4

regulations, each seeking the same relief; that is, reimbursement for medical services. In Count II, UMMS asserts a quasi-contract theory of recovery even though there is an express, written contract between the parties that is not disputed. In Counts III—IV, UMMS asserts private causes of action under federal and state statutes and regulations regarding reimbursement of "emergency services" and "poststabilization services" and the methods by which MPC determines reimbursements of claims.

## ARGUMENT

**A.  Legal Standard.**

Rule 12(b)(6) provides that a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

**B.  Plaintiff Fails to State a Claim for Unjust Enrichment.**

To establish a claim of unjust enrichment, a plaintiff must show: (1) a benefit conferred (i) upon the defendant (ii) by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. Hill v. Cross Country Settlements, LLC, 402 Md. 281 (2007) (citing Berry & Gould, P.A. v. Berry, 360 Md. 142 (2000)). Plaintiff alleges in its Complaint that it "conferred a benefit

5

upon MPC by providing services to MPC's members" and that it is "inequitable for MPC to retain federal and state tax dollars entrusted to [it] by the State of Maryland." Compl. ¶¶ 112, 114. Plaintiff seeks to recover federal funds that were paid to MPC under the Medicaid program. Id.

      Plaintiff has not pled sufficient facts to support all three elements of an unjust enrichment claim. With regard to the first element, Plaintiff does not allege what benefit Plaintiff conferred upon Defendant. Plaintiff alleges only that it provided services to non-parties. Id. ¶ 112. For the second element, Plaintiff does not allege any facts identifying MPC had knowledge or appreciation of any benefit, that is, had the opportunity to decline the benefit. Hill, 936 A.2d at 354 ("The essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit."). Finally, for the third element, Plaintiff does not allege that it is inequitable for MPC to retain a benefit conferred on it by Plaintiff. Instead, Plaintiff alleges that it is unjust for MPC to retain a benefit conferred on it by a third-party, i.e., the government. Compl. ¶¶ 114. These facts do not sufficiently establish a colorable claim for unjust enrichment against MPC.

      Plaintiff's Unjust Enrichment claim must also be dismissed because, "[as] a general rule, 'no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.' Id. (internal quotations and citation omitted); see also FLF, Inc. v. World Publications, Inc., 999 F. Supp. 640, 642 (D. Md. 1998) ('It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.). Thus, although a plaintiff 'may not recover under both contract and quasi-contract theories, [he/she] is not barred from pleading these theories in the alternative where the existence

6

of a contract concerning the subject matter is in dispute.' Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F. Supp.2d 785, 792 (D. Md. 2002)." Chevron U.S.A. Inc. v. Apex Oil Co., 113 F. Supp. 3d 807, 822 (D. Md. 2015).

Plaintiff, UMMS, has not alleged that there is a dispute between the parties as to whether the PHP Agreement is a valid and binding contract. Rather, Plaintiff alleges that: "MPC entered into a Participating Health Provider Agreement with UMMS, effective January 1, 2018 (the 'PHP Agreement'), pursuant to which UMMS agreed to provide services to MPC Members." Compl. ¶11; "UMMS has provided medical care, including emergency services, to MPC Members consistent with its obligations under the PHP Agreement." Compl. ¶13; "the PHP Agreement also exists to ensure that UMMS is paid appropriately for the services it renders to MPC members." Compl. ¶25; "MPC is obligated under the PHP Agreement to pay UMMS at the rates set forth in the fee schedule incorporated into the PHP Agreement." Compl. ¶28; and two sections in the Complaint are dedicated to the PHP Agreement, Compl. ¶¶ 46-64. Nowhere in the Complaint does Plaintiff allege that there is a dispute as to whether the PHP Agreement is a valid, enforceable contract nor does Plaintiff allege fraud or bad faith in the formation of the contract. Chevron U.S.A. Inc., 113 F. Supp. 3d at 822 (citing Jones v. Pohanka Auto N., Inc., 43 F. Supp. 3d 554, 573 (D. Md. 2014) ("noting that although a plaintiff may plead in the alternative by asserting claims for unjust enrichment and breach of contract, when doing so the 'plaintiff's claim for unjust enrichment *must* include an allegation of fraud or bad faith in the formation of the contract.') (citing cases).)"

"[U]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided. J.E. Dunn Constr. Co. v.

7

S.R.P. Dev. Ltd. P'ship, 115 F. Supp. 3d 593, 608 (D. Md. 2015) (quoting Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 747 A.2d 600, 608 (2000))." Terra Firma, LLC v. Wicomico Cnty., 2022 U.S. Dist. LEXIS 56062, *15; 2022 WL 899446. "[A] claim for unjust enrichment is not available when 'the subject matter of the claim is covered by an express contract between the parties.'" Adcor Indus., Inc. v. Beretta U.S.A. Corp., 250 Md. App. 135, 155 (2021) (quoting Cnty. Comm'rs of Caroline Cnty. supra., 358 Md. at 96). "Parties entering into a contract assume certain risks with the expectation of a beneficial return; however, when such expectations are not realized, they may not turn to a quasi-contract theory for recovery." J. Roland Dashiell, 358 Md. at 101 (quoting Batler, Capitel & Schwartz v. Tapanes, 517 N.E.2d 1216, 1219 (Ill. App. Ct. 1987)).

Plaintiff has not only failed to plead the necessary elements of a cause of action for unjust enrichment, but the Complaint is silent as to fraud or bad faith in the formation of the PHP Agreement entered into more than seven years ago. Nor has Plaintiff alleged that there is a dispute as to the existence of a valid and enforceable contract. Rather, Plaintiff has extensively relied on the PHP Agreement as part of its allegations against MPC. Plaintiff simply does not have a legally viable cause of action for unjust enrichment. Accordingly, Count II should be dismissed with prejudice.

**C.     Plaintiff's Claim for Declaratory Judgment in Count III Should be Dismissed.**

"Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even [if] the case is under the court's diversity jurisdiction." White v. Nat'l Union Fire Ins. Co. of Pittsburgh, 913 F.2d 165, 167 (4th Cir. 1990).[6] The Supreme Court has "long

---

[6] There is no conflict between the federal and Maryland declaratory judgment acts because Maryland's act "shall be interpreted and construed … to harmonize, as far as possible, with federal laws … on the subject of declaratory judgments and decrees." Md. Code Ann., Cts. & Jud. Proc. § 3-414; see also Hamilton v. McAuliffe, 227 Md, 336, 341 n.2 (1976).

considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged." Medtronic, Inc. v. Mirowski Fam. Ventures, LLC, 571 U.S. 191, 199 (2014) (cleaned up). To demonstrate that a plaintiff is entitled to declaratory judgment, "[a plaintiff] must first identify an underlying right." Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc., 86 F. Supp. 3d 464, 471 (E.D. Va. 2015). A claim for declaratory judgment "must fail" if the plaintiff is not entitled to substantive relief as to the underlying claim. United Bank v. Buckingham, 761 F. App'x 185, 193 n.7 (4th Cir. 2019). As Plaintiff has not identified a private right of action or right to substantive relief on its statutory claims, they must be dismissed. United States v. Payne, 54 F.4th 748, 753–54 (4th Cir. 2022).

The Declaratory Judgment Act, 28 U.S.C. § 2201, "provides a remedy in cases" and "does not create an independent cause of action." Profiles, Inc. v. Bank of Am. Corp., 453 F. Supp. 3d 742, 752 (D. Md. 2020) (quoting Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am., 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)); NAACP v. U.S. Dep't of Homeland Sec., 364 F. Supp. 3d 568, 573 (D. Md. 2019) (dismissing count for declaratory relief because declaratory relief is "a mode of relief, and is not an independent cause of action"); see also FedEx Trade Networks Transp. v. Airboss DEF. Grp., LLC, No. 22-cv-01313-LKG, 2024 U.S. Dist. LEXIS 62748, at *30 (D. Md. Apr. 4, 2024) ("Because ADG may not pursue the remedy of declaratory relief as an independent cause of action, the Court must dismiss this claim.").

Additionally, when a request for declaratory relief "would be duplicative of claims already alleged, dismissal is warranted." Chevron U.S.A. Inc., 113 F. Supp. at 824 (quoting Sharma v. OneWest Bank, FSB, No. 11-0834, 2011 U.S. Dist. LEXIS 124978, 2011 WL

9

5167762, at *6 (D. Md. Oct. 28, 2011)). "[W]here the same conduct underlies claims for declaratory judgment and breach of contract, courts generally dismiss the declaratory judgment claim as duplicative in favor of the better or more effective remedy of the underlying litigation itself." Geist v. Hispanic Info. & Telecomm. Network, Inc., Civ. No. PX-16-3630, 2018 U.S. Dist. LEXIS 36054, 2018 WL 1169084, at *7 (D. Md. 2018) (quoting Dorset Indus., Inc. v. Unified Grocers, Inc., 893 F. Supp. 2d 395, 403 (E.D.N.Y. 2012)). "'This type of double pleading is not the purpose of a declaratory judgment.'" Penn Mut. Life Ins. Co. v. Berck, No. DKC 09-0578, 2010 U.S. Dist. LEXIS 86025, at *8 (D. Md. 2010) citing (Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Thus, Count III should be dismissed with prejudice.

D.      **Plaintiff's Claim for Injunctive Relief in Count IV Should Be Dismissed Because It Is Not an Independent Cause of Action.**

In Count IV, Plaintiff asserts an "Injunctive Relief" cause of action, requesting that the Court enjoin Defendant from using code lists, denying claims, and from setting aside the prudent layperson standard. See Compl. at p. 30 & ¶ 127. However, this Court has held that "a claim for injunctive relief is not a standalone cause of action." Doe v. Salisbury Univ., 107 F. Supp. 3d 481, 493 (D. Md. 2015); Fare Deals, Ltd. v. World Choice Travel.com, Inc., 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) ("a request for injunctive relief does not constitute an independent cause of action"). Rather, an "injunction is … the remedy sought for the legal wrongs alleged in ... the substantive counts." Id.; Simone v. VSL Pharms., Inc., No. TDC-15-1356, 2017 U.S. Dist. LEXIS 1827, 2017 WL 66323, at *10 (D. Md. 2017) ("Where . . . injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action."). Plaintiff apparently recognizes this rule of law by including a request for the remedy of injunctive relief in its Prayer for Relief. Compl. at p. 32

¶ E. See De Simone v. VSL Pharms., Inc., No. TDC-15-1356, 2017 U.S. Dist. LEXIS 1827, at *36 (D. Md. Jan. 5, 2017) (The court dismissed the injunctive relief count, reasoning that where "injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action"). As such, Count IV should be dismissed with prejudice.

## CONCLUSION

Viewing the allegations of the Complaint in a light most favorable to Plaintiff, the non-moving party, Plaintiff has not sufficiently alleged facts necessary to support an unjust enrichment claim. Likewise, Plaintiff has failed to state plausible claims for declaratory and injunctive relief in its Complaint. Thus, for the foregoing reasons, MPC, by counsel, respectfully requests this Honorable Court grant its Motion to Dismiss, dismiss Counts II-IV of the Complaint with prejudice, and for other and further relief as is deemed just and appropriate.

## REQUEST FOR A HEARING

Pursuant to Local Rule 105.6, Plaintiff respectfully requests a hearing on its motion and any opposition filed in response.

Dated: July 17, 2025

Respectfully submitted,

**MARYLAND CARE, INC. d/b/a**
**MARYLAND PHYSICIANS CARE**

By Counsel,

     */s/* M. Celeste Bruce
M. Celeste Bruce, Esq. (Bar No. 10710)
Madelaine Kramer Katz, Esq. (Bar No. 19760)
RIFKIN WEINER LIVINGSTON, LLC
7700 Wisconsin Ave, Suite 320
Bethesda, Maryland 20814
(301) 951-0150 (phone)
(301) 951-0172 (facsimile)
cbruce@rwllaw.com
mkatz@rwllaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2025, a true copy of the foregoing was served by U.S. Mail and e-mail on all counsel of record as follows:

>Brett Ingerman
>Kathleen A. Birrane
>Joseph Davison
>DLA PIPER LLP (US)
>650 S. Exeter St., Suite 1100
>Baltimore, Maryland 21202-4576
>brettingerman@us.dlapiper.com
>kathleen.birrane@us.dlapiper.com
>joseph.davison@us.dlapiper.com
>
>Vinay Kohli
>PROSKAUER ROSE LLP
>2029 Century Park East, Suite 2400
>Los Angeles, CA 90067
>vkohli@proskauer.com
>
>D. Austin Rettew
>PROSKAUER ROSE LLP
>Eleven Times Square
>New York, NY 10036
>arettew@proskauer.com
>
>*Counsel for Plaintiff*

　　　　　　　　　　　　　　　　　　　　*/s/* M. Celeste Bruce
　　　　　　　　　　　　　　　　　　　M. Celeste Bruce, Esq. (Bar No. 10710)