## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| ·v. | * | |
| | | Civil No. 25-2319-BAH |
| MARYLAND CARE, INC., | * | |
| | * | |
| Defendant. | * | |

.*   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Plaintiff University of Maryland Medical System Corporation ("UMMS") brought suit against Maryland Care, Inc. d/b/a Maryland Physicians Care ("MPC") alleging a breach of contract and other claims related to UMMS's provision of healthcare to members of MPC. ECF 1. Pending before the Court are two motions. First, MPC filed a motion to dismiss, ECF 2, which UMMS opposes, ECF 9. MPC has filed a reply. ECF 11. Second, UMMS has filed a motion to remand. ECF 10. MPC filed an opposition, ECF 12, and UMMS filed a reply, ECF 13. All filings include memoranda of law.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, UMMS's motion to remand is GRANTED, except with respect to its request for attorney's fees. MPC's motion to dismiss is DENIED as moot.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND

Maryland "Medicaid is a joint federal and state program that provides free or low-cost health care coverage" to vulnerable Marylanders. ECF 4, at 2 ¶ 5. "HealthChoice [is] a mandatory Medicaid managed care program that provides Maryland Medicaid participants with the ability to· enroll in one of nine Medicaid" managed care organizations ("MCOs"), one of which is MPC. *Id.* at 3 ¶¶ 6, 8. MPC is obligated by its contract (the "Plan Contract") with the Maryland Department of Health ("MDH") "to manage the care of its members, which includes paying the health care. professionals and facilities who provide them with covered health services." *Id.* at 3–4 ¶ 8.

Pursuant to its obligation to manage the care of its members, "effective January 1, 2018," "MPC entered into a Participating Health Provider Agreement (the 'PHP Agreement')" with UMMS, under "which UMMS agreed to provide services to MPC Members." *Id.* at 4–5 ¶ 11. UMMS alleges that "MPC agreed to pay for those services at specified rates" which are either "set by the Maryland Health Services Cost Review Commission" or "negotiated and agreed to by UMMS and MPC." *Id.* According to UMMS, "[a]t all times relevant to this Complaint, UMMS has provided medical care, including emergency services, to MPC members consistent with its obligations under the PHP Agreement." *Id.* at 5 ¶ 13. In return, UMMS claims that "MPC is obligated under the PHP Agreement to pay UMMS at the rates set forth in the fee schedule incorporated into the PHP Agreement." *Id.* at 8 ¶ 28.

UMMS alleges that MPC has engaged in a "longstanding, ongoing, deliberate, and systemic practice[] of denying timely and complete payment for covered medical services provided to MPC members by UMMS," causing "UMMS to lose over $15 million." *Id.* at 5–6 ¶¶ 14–15. Specifically, UMMS alleges that MPC denies UMMS's claims for emergency services that UMMS is required to provide under the federal Emergency Medical Treatment and Labor Act ("EMTALA"). *Id.* at 9 ¶ 31. UMMS asserts that the Plan Contract between MPC and MDH

2

"obligates MPC to cover all Medicaid benefits that are required to be covered under federal and/or Maryland law and regulations," including emergency services under EMTALA. *Id.* at 11 ¶ 36, at 12 ¶ 43; *see also id.* at 13 ¶ 44 ("Referencing and incorporating both federal and state law, the Plan Contract unquestionably requires MPC to provide coverage for emergency services to its members, and to pay UMMS for such services.").

UMMS alleges that it is similarly "required to provide 'Emergency Medical Services' to MPC Members" under the PHP Agreement. *Id.* at 13 ¶ 47. UMMS claims that "[w]hether a service must be covered as an 'emergency' service is determined by a coverage standard known as the 'prudent layperson' standard ('PLP Standard')," which is adopted and incorporated in the Plan Contract. *Id.* at 9 ¶ 33, at 11 ¶ 36. MPC, UMMS alleges, applies a "flawed and unlawful coverage standard . . . instead of the PLP standard" to deny claims in "violation of federal and state law, the Plan Contract, and the PHP Agreement." *Id.* at 15–16 ¶¶ 54, 57.

Based on these allegations, UMMS brings four causes of action in the complaint: breach of contract (Count I); in the alternative to a breach of contract, unjust enrichment (Count II); declaratory relief (Count III); and injunctive relief (Count IV). *Id.* at 28–31. In connection with Counts I and II, UMMS requests compensatory damages in excess of $15 million and "specific performance of MPC's obligations under the Agreement." *Id.* at 32. UMMS also seeks a declaration that: "MPC has breached the Agreement by failing to pay UMMS for the services referenced" in the complaint; "MPC's use of internally developed code lists . . . to automatically deny or downcode claims . . . violates the Agreement and applicable law"; "MPC's denial of claims for behavioral health-related emergency care . . . is in violation of its obligations under the Agreement and governing Medicaid standards"; and "MPC's systemic failure to apply the prudent layperson standard in evaluating emergency claims constitutes an ongoing breach of its contractual

and legal obligations." *Id.* at 32–33. UMMS also requests that the Court enjoin MPC from "using its internally developed code lists . . . to automatically deny or downcode claims"; "denying claims for behavioral health-related emergency care"; and "setting aside the prudent layperson standard when evaluating emergency claims." *Id.* at 33.

UMMS initially filed this action in the Circuit Court for Baltimore City, Maryland. ECF 1, at 1. MPC removed the action to federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* Specifically, MPC asserted that removal is proper because "Counts II, III, and IV allege violations of federal law" including that "MPC's legal obligations to make certain payments are established by: (i) the federal Medicaid statutes; (ii) EMTALA; and (iii) the federal EMTALA regulations." *Id.* at 5. MPC also argued that "this Court has supplemental jurisdiction over Plaintiff's state law claims (Count I-Breach of Contract)." *Id.* at 6. MPC simultaneously filed a motion to dismiss, ECF 2, which is fully briefed, *see* ECF 9 (UMMS's opposition); ECF 11 (MPC's reply). UMMS has also filed a motion to remand, ECF 10, which MPC opposes, ECF 12 (MPC's "Opposition"), and to which UMMS has filed a reply, ECF 13. The Court begins, and ends, by addressing the motion to remand. *See Comm'r of Lab. & Indus. to Use & Benefit of Valerie Steele v. Washington Metro. Area Transit Auth.*, Civ. No. RDB-25-1746, 2025 WL 2917382, at *1 (D. Md. Oct. 14, 2025) ("It is generally improper to resolve a motion dismiss before deciding a motion to remand.").

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis[.]" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Federal law grants defendants "[t]he right to remove a case from state to federal court" if a United States district court would have original jurisdiction over the case. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Where, as here, "there is no diversity of

4

citizenship alleged, the propriety of removal depends on whether this case falls within the original jurisdiction of the district court under 28 U.S.C. § 1331 as a civil action 'arising under' the laws of the United States." *State of Md. v. Philip Morris Inc.*, 934 F. Supp. 173, 175 (D. Md. 1996) (citing *Mulcahey*, 29 F.3d at 151).

"[A] case can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). The first and "most direct[]" of these two is "when federal law creates the cause of action asserted." *Id.* In this instance, federal question jurisdiction is determined "by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "When applying the well-pleaded complaint rule to removal and federal-question jurisdiction, [the Fourth Circuit has] stated that 'courts ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022) (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005)) (additional internal quotation marks omitted). A plaintiff is the "master of the claim" and thus may "avoid federal jurisdiction by exclusive reliance on state law" in drafting a complaint. *Caterpillar Inc.*, 482 U.S. at 392. "Under the corollary 'artful pleading' doctrine, however, 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983)).

And so, where "a claim finds its origins in state rather than federal law," the Supreme Court of the United States has "identified a 'special and small category' of cases in which arising under

jurisdiction still lies." *Gunn*, 568 U.S. at 258. (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This second path to finding that "arising under" jurisdiction is proper is often referred to as *Grable* jurisdiction, which is named after *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). *See City of Annapolis, Maryland v. BP P.L.C.*, Civ. No. SAG-21-00772, 2022 WL 4548226, at *9 (D. Md. Sept. 29, 2022), *aff'd sub nom. Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024). The relevant inquiry under *Grable* is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow v. Thompson*, 478 U.S. 804, 813 (1986). Accordingly, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

A party seeking removal carries the burden of establishing federal subject matter jurisdiction. *Mulcahey*, 29 F.3d at 151. "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (emphasis in original) (citing *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008)). A federal court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Goucher*

6

*Coll. v. Continental Casualty Co.*, 541 F. Supp. 3d 642, 647 (D. Md. 2021) (quoting *Richardson v. Phillip Morris Inc.*, 950. F. Supp. 700, 702 (D. Md. 1997)). Thus, if federal jurisdiction is doubtful, the Court should grant a motion to remand. *See Mulcahey*, 29 F.3d at 151.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "[A]n award of fees under § 1447(c) is left to the district court's discretion," *id.* at 139, but the Court "should be 'faithful to the purposes' of awarding fees under § 1447(c)," *id.* at 141 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1993)). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

## III.   ANALYSIS

### A.   There is no federal question presented on the face of the complaint.

In its notice of removal, MPC contends that removal is proper because UMMS's claims for unjust enrichment (Count II), declaratory relief (Count III), and injunctive relief (Count IV) all "aris[e] out of allegations that MPC violated federal law," including EMTALA and "the federal Medicaid statute." ECF 1, at 5. This assertion is incorrect as UMMS's complaint plainly alleges only *state* law claims of breach of contract and unjust enrichment, as well as two additional claims for relief.[2] *See* ECF 4, at 28–29. None of the counts in UMMS's complaint are expressly brought

---

[2] MPC argues in its motion to dismiss that Counts III and IV are subject to dismissal because they are not independent causes of action. ECF 2-1, at 9–11. In its opposition, however, MPC argues

7

under federal law, nor do they seek to enforce or obtain relief under any federal statutes. *See id.*; *cf. Rock Creek Cap., LLC v. Johnson*, Civ. No. DKC-24-284, 2024 WL 895121, at *2 (D. Md. Mar. 1, 2024) ("The face of the complaint must assert a claim directly created by federal law." (citing *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F. 4th 271, 279 (4th Cir. 2022))). And to the extent that MPC argues that any of UMMS's claims for relief are brought under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, the general rule is that the "Declaratory Judgment Act does not confer jurisdiction upon the federal courts" absent independent subject matter jurisdiction. *Liberty Mut. Fire Ins. Co. v. Hayes*, 122 F.3d 1061, at *2 (4th Cir. 1997) (table). As such, federal question jurisdiction does not arise from the face of the complaint.

## B.    MPC fails to establish *Grable* jurisdiction.

Perhaps in recognition that the complaint does not expressly allege any federal claims, MPC pivots in its opposition to the argument that federal question jurisdiction arises because UMMC has engaged in artful pleading to conceal the true nature of its claims, which, MPC contends, necessarily depend on the resolution of a federal question. *See* ECF 12, at 11, 13. The Court disagrees with MPC's contention that *Grable* jurisdiction applies here.

As noted, for *Grable* jurisdiction to lie, MPC must show that "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. A federal question is necessarily raised when "it is essential to resolving a state-law claim, meaning that 'every legal theory supporting the claim requires the resolution of a federal issue.'" *Burrell*

---

that Counts III and IV present a federal question. ECF 12, at 12. In this memorandum opinion, the Court analyzes whether Counts III and IV confer federal question jurisdiction based on MPC's arguments, without deciding whether they are standalone claims.

*v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)). MPC has the burden of establishing all four elements. *See Gunn*, 568 U.S. at 258 (holding all four requirements must be met); *see also Mulcahey*, 29 F.3d at 151. Despite this burden, MPC does not address the second and fourth elements with respect to any of UMMS's claims. *See* ECF 12, at 8–19. Remand is warranted for this reason alone. *Cf. Mayor & City Council of Baltimore*, 31 F.4th at 209 (determining *Grable* jurisdiction did not exist where movant failed to establish just one prong of the inquiry). Nevertheless, the Court continues its analysis and finds that MPC has failed to show under the first prong that a federal question is necessarily raised in order to establish federal question jurisdiction over UMMS's claims.[3]

### 1.    Breach of Contract (Count I)

In its notice of removal, MPC concedes that UMMS's breach of contract claim is a state law claim lacking independent federal question jurisdiction. *See* ECF 1, at 6 ("[T]his Court has supplemental jurisdiction over Plaintiff's state law claims (Count I-Breach of Contract) . . . ."). But in opposing the motion to remand, MPC changes course and asserts that a federal question is necessarily raised under the breach of contract claim because it "turns on whether [MPC] fulfilled its obligations under federal law." ECF 12, at 14.

MPC argues that "analysis of federal law, including Medicaid [and] EMTALA" is necessary to determine MPC's "duty" to UMMS, namely, "what the parties' obligations are to one another." ECF 12, at 13. "To state a breach of contract claim, a plaintiff must show that the parties reached a valid and binding agreement; that the defendant breached the terms of the agreement;

---

[3] Notably, although MPC mentions UMMS' unjust enrichment claim in its opposition, it advances no argument (outside of its arguments in the notice of removal) that this Court has federal question jurisdiction based on the unjust enrichment claim. *See* ECF 12. As MPC has the burden of establishing federal question jurisdiction, the Court concludes it has failed to meet this burden with respect to the unjust enrichment claim.

and that the plaintiff suffered damages as a result of the breach." *McGowens v. Bank of Am.*, Civ. No. ELH-14-1101, 2015 WL 1137749, at *8 (D. Md. Mar. 12, 2015) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). "In other words, '[i]t is the parties' agreement that ultimately determines whether there has been a breach.'" *Id.* (quoting *Mathis v. Hargrove*, 888 A.2d 277, 396 (Md. App. 2008)). As such, in a breach of contract claim, the applicable agreement at issue determines the parties' obligations and also informs whether those obligations have been breached. *See FLB Constr., LLC v. K & D Home Improvement, LLC*, No. 178, Sept. Term,2024, 2025 WL 3706627, at *3 (Md. App. Dec. 22, 2025) ("A contract is 'an agreement which creates an obligation[.]'" (quoting *Post v. Gillespie*, 219 Md. 378, 384 (1959))). Here, UMMS specifically alleges that "MPC breached the Agreement by failing to properly compensate UMMS for covered claims," and seeks redress for that breach in the amount of $15 million. ECF 4, at 28 ¶¶ 108, 110.

MPC fails to show how resolution of this issue necessarily turns on the interpretation of any federal statute. First, the Court is not persuaded by the cases MPC cites in support of its argument that the breach of contract claim turns on an interpretation of federal law, including *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed. Cir. 2000) and *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed. Cir. 1993). These cases both involved patent law and are factually distinct from the contract at issue here. *See Additive Controls & Measurement Sys.*, 986 F.2d at 478 (discussing application of federal patent law to a business disparagement claim); *U.S. Valves*, 212 F.3d at 1372 (remarking that federal jurisdiction was proper because "this case contains a substantial issue of federal patent law"). Moreover, both cases were decided before *Gunn v. Minton*, 568 U.S. 251 (2013), where the Supreme Court set forth the requirements for *Grable* jurisdiction. The significance of the *Gunn* decision was pointed out by the United States

10

Court of Appeals for the Federal Circuit in *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374 (Fed. Cir. 2020). There, an appellant cited to *U.S. Valves* in support of its argument for federal question jurisdiction over state law claims. *AntennaSys, Inc.*, 976 F.3d at 1381. The *AntennaSys* court suggested that the appellant's reliance on *U.S. Valves* was misguided because it "long predates *Gunn v. Minton*" and, in coming to its conclusion that the district court lacked federal question jurisdiction, noted that *U.S. Valves* "was abrogated by *Gunn* and . . . subsequent case law applying *Gunn.*" *See id.* at 1382 n.5

MPC also briefly cites to two cases from the District of New Jersey, *Gremo v. Bayer Corp.*, No. 1:19-CV-13432-NLH-AMD, 2020 WL 1921952 (D.N.J. Apr. 21, 2020) and *Allen v. New Jersey*, Civ. No. 16-5672, 2016 WL 6824373 (D.N.J. Nov. 18, 2016), to assert that federal question jurisdiction is proper where "a plaintiff 'generally' alleges that a defendant failed to comply with federal laws" and "where a federal law will provide guidance in determining the outcome of a state law claim." ECF 12, at 14–15. But MPC fails to further develop its arguments resting on these cases and instead makes only conclusory statements that UMMS "makes nearly identical allegations" to the plaintiffs in *Gremo* "in its Complaint," and that UMMS's "position that federal laws and regulations 'inform' . . . the Court in determining [its] claims is telling." *Id.* And, as UMMS notes, MPC fails to reckon with key distinctions in *Gremo* and *Allen*. ECF 13, at 9. For example, neither case involves a breach of contract claim and, most notably, the court found in both *Gremo* and *Allen* that the plaintiffs *expressly* alleged violations of federal law on the faces of the respective complaints. *See Gremo*, 2020 WL 1921952, at *2–3 (finding that the plaintiff "raised claims arising under the laws of the United States, as well as claims that necessarily depend on resolution of a substantial question of federal law, to both of which § 1331 applies"); *Allen*, 2016 WL 6824373, at *2 (finding two counts expressly alleged violation of federal law including

11

the Americans with Disabilities Act and "Federal and New Jersey Laws against Discrimination"). Accordingly, the Court is not persuaded by MPC's citation to these cases.

Second, MPC argues that to resolve the breach of contract claim, the Court must "analyze an array of . . . federal laws," "declare the parties' rights and obligations to each other under those laws" and "declare that MPC violated those laws." ECF 12, at 13–14. The Court acknowledges that the complaint *mentions* federal law. *See, e.g.*, ECF 4, at 9 ¶ 31 (discussing EMTALA); at 9–10 ¶ 33 (providing that the PLP standard arises from Congress' Balanced Budget Act of 1997). However, the complaint alleges that MPC's obligation to pay UMMS is contained in the PHP Agreement between the parties and the Plan Contract between MPC and MDH. *See* ECF 4, at 4 ¶ 11 (alleging that MPC entered into a PHP Agreement with UMMS and "agreed to pay for [certain] services at specified rates"), at 13 ¶ 34 ("Referencing and incorporating both federal and state law, the Plan Contract unquestionably requires MPC to provide coverage for emergency services to its members, and to pay UMMS for such services."). And "the mere presence of a federal issue" in this contractual dispute "does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813; *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005) ("The Supreme Court has been quite clear that for removal to be proper under the substantial federal question doctrine, a plaintiff's ability to establish the necessary elements of his state law claims must rise or fall on the resolution of a question of federal law.").

MPC fails to explain why the Court would be necessarily required to look beyond the PHP Agreement or Plan Contract to federal law in order to resolve the breach of contract claim. Moreover, even if the relevant agreements incorporate language or are informed by standards from federal statutes, a "private contract cannot create federal question jurisdiction simply by reciting a federal statutory standard." *Alliant Techsystems, Inc. v. Raytheon Co.*, No. 1:13-CV-00919, 2013

12

WL 12321727, at *1 (E.D. Va. Sept. 17, 2013) (citing *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 n.2 (4th Cir. 1994)); *see also Verizon Maryland, Inc. v. Glob. NAPS, Inc.*, 377 F.3d 355, 394 (4th Cir. 2004) (Niemeyer, J., concurring in part) ("Even if the parties agreed to track federal law, that gratuitous incorporation of federal law would not create jurisdiction under § 1331."). Accordingly, MPC fails to meet its burden of showing that federal law is essential to resolving UMMS's breach of contract claim and thus fails to satisfy the necessity element of *Graber* jurisdiction.[4]

### 2.    EMTALA

MPC also argues that a federal question is necessarily raised because UMMS "alleged specific violations of EMTALA and Medicaid." ECF 12, at 15; *see also* ECF 1, at 6. This argument also fails to establish jurisdiction.

"EMTALA, commonly known as the 'Patient Anti-Dumping Act,' was enacted to prevent hospitals' suspected practice of 'dumping' patients who were unable to pay for care, either by refusing to provide basic emergency treatment ('failure to screen') or by transferring patients to other hospitals before the patients' conditions were sufficiently stabilized ('failure to stabilize')." *Johnson v. Frederick Mem'l Hosp., Inc.*, Civ. No. WDQ-12-2312, 2013 WL 2149762, at *3 (D. Md. May 15, 2013) (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994)). It "requires that participating hospitals screen all incoming patients to determine whether they have an emergency medical condition and stabilize any emergency medical condition before transferring the patient." *Mullins v. Suburban Hosp. Healthcare Sys., Inc.*, Civ. No. PX-16-1113, 2017 WL 480755, at *4 (D. Md. Feb. 6, 2017) (citing 42 U.S.C. § 1395dd(b)(1)). EMTALA

---

[4] As MPC has failed to meet the necessity prong, the Court need not reach its substantiality arguments. *See* ECF 12, at 13; *see also Cf. Mayor & City Council of Baltimore*, 31 F.4th at 209 (determining *Grable* jurisdiction did not exist where movant failed to establish one prong of the inquiry).

provides for two causes of action.  First, "EMTALA creates a private cause of action for '[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section.'" *Johnson*, 2013 WL 2149762, at *3 (citing 42 U.S.C. § 1395dd(d)(2)(A)).  Second, it provides recovery for hospitals upon "suffer[ing] a financial loss as a direct result of a participating hospital's violation of a requirement of this section." 42 U.S.C. § 1395dd(d)(2)(B).

Nothing in the complaint suggests that UMMS alleges a direct violation of EMTALA. *See* ECF 1, at 5.  A review of the allegations in the complaint shows that UMMS's references to EMTALA provide background regarding a "Medicaid MCO's obligation to pay a hospital for emergency services," the standards incorporated in the Plan Contract, and UMMS's obligations under EMTALA. *See, e.g.,* ECF 4, at 9 ¶ 31 ("A Medicaid MCO's obligation to pay a hospital for emergency services is established by federal and state laws that are designed to be commensurate with" EMTALA, "which requires all licensed hospitals with an emergency department ("ED") to provide services to all patients who present with emergency medical conditions regardless of their ability to pay"), at 11 ¶ 36 ("The Plan Contract adopts and incorporates the EMTALA . . . standards."), at 12–13 ¶¶ 41–43 (explaining that "MDH issued a transmittal to Medicaid MCOs" which confirmed "that COMAR requires Medicaid MCOs 'to pay hospital emergency facilities and providers for medical screening services rendered to meet the requirements of the federal' EMTALA"), at 14 ¶ 50 ("Independent from, but consistent with, the PHP agreement, UMMS is obligated under EMTALA to provide a medical screening and ancillary services . . . .").  UMMS does not otherwise allege that MPC violated EMTALA.

Though MPC asserts that "[f]ederal courts . . . exercise jurisdiction over cases where the plaintiff alleged specific violations of EMTALA and Medicaid," the cases cited by MPC—

14

*Harrison v. Christus St. Patrick Hosp.*, 432 F. Supp. 2d 648 (W.D. La. 2006), and *M.J.W. v. Jackson Hosp. & Clinic*, No. 2:16-CV-640-GMB, 2016 WL 6573968 (M.D. Ala. Nov. 4, 2016)— are inapposite. These cases both involved patients directly suing hospitals related to care received in those hospitals. *See Harrison*, 432 F. Supp. 2d at 650 ("Federal question jurisdiction in this case is conferred based upon the plaintiff's allegations of improper emergency room screening and/or treatment based upon the plaintiff's ability to pay."); *M.J.W.*, 2016 WL 6573968, at *3 ("Plaintiffs here have claimed violations of EMTALA in allegedly improper emergency room screening based upon Defendants' inquiry into Plaintiff Cortney Williams' method of payment and insurance status."). And in *M.J.W. v. Jackson Hosp. & Clinic*, while the individual patients did not specifically cite to EMTALA as a cause of action, the plaintiffs "alleged facts to support violations of EMTALA, sought to hold Defendants to EMTALA's strict liability standard, and claimed damages pursuant to the alleged violations of the statute." 2016 WL 6573968, at *2. Also relevant in *M.J.W.* was the fact that the defendant's notice of removal was filed based on a third amended complaint that did expressly bring a claim under EMTALA and, procedurally, "the court had federal question jurisdiction pursuant to § 1331 at the time of removal." *Id.* at *1, *3 (observing that "Defendants . . . invoked this court's federal question jurisdiction by virtue of the Third Amended Complaint's inclusion of a claim under" EMTALA and noting that "Plaintiffs' subsequent attempts to amend away any mention of EMTALA do not suddenly strip the court of subject matter jurisdiction"). None of the circumstances in *Harrison* or *M.J.W.* are present here.

With respect to its contention that UMMS alleged a violation of Medicaid laws or regulations, MPC fails to further develop this argument as it neither cites any supporting caselaw nor points to any specific section of the complaint that alleges a violation of Medicaid. *See* ECF

15

12, at 15–16. The Court is not persuaded that any violation of EMTALA or Medicaid is at the heart of UMMS's claims as required under *Grable* jurisdiction.

### 3.    Declaratory and Injunctive Relief (Counts III and IV)

MPC also argues that federal question jurisdiction can be established based on UMMS's requests for declaratory and injunctive relief in Counts III and IV. *See* ECF 12, at 16 (asserting that federal question jurisdiction exists because UMMS requests "a declaration that MPC violated EMTALA and/or Medicaid, and an injunction, seeking to enjoin MPC under EMTALA and/or Medicaid from violating those federal laws"). However, UMMS does not seek relief under the federal Declaratory Judgment Act, and even if it did, the Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (first citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); and then citing *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor,* 118 F.3d 205, 210 (4th Cir. 1997)). "Stated differently, '[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.'" *Id.* (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)).

Here, the Court lacks an independent basis for subject matter jurisdiction over UMMS's state law breach of contract and unjust enrichment claims and, it follows, lacks jurisdiction over any claim for declaratory relief. *See Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 871 (E.D. Va. 2012) ("[T]he Court must have before it a properly pled claim over which it has an independent basis for exercising original jurisdiction before it may act pursuant to the Declaratory Judgment Act."), *aff'd,* 743 F.3d 438 (4th Cir. 2014). Similarly, UMMS's claim for injunctive relief does not request any remedy under federal law, as it seeks "injunctive relief" to "oblige[] MPC to honor the Agreement it freely executed." ECF 4, at 31. Specifically, UMMS

16

seeks to enjoin MPC from 1) "using its internally developed code lists . . . to automatically deny and downcode claims"; 2) "denying claims for behavioral health-related emergency care"; and 3) "setting aside the prudent layperson standard." ECF 4, at 31. MPC fails to establish that UMMS's request for injunctive relief would necessarily require any interpretation of federal law. Further, UMMS does not ask for any remedies expressly granted by EMTALA or any provision of Medicaid that would confer subject matter jurisdiction over its claims for relief under Counts III and IV. *Cf. Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 207 (D.S.C. 2019) (finding the court lacked subject matter jurisdiction over declaratory and injunctive relief claims under the Copyright Act where the plaintiff's "requests for declaratory and injunctive relief are not statutorily embodied within the Act").

### C.    MPC's remaining argument likewise fails.

MPC advances the proposition that federal question jurisdiction can be inferred because UMMS requested $15 million in damages, which "is not permitted to be included in a complaint under Maryland law when merely pursuing state law breach of contract or unjust enrichment claims." ECF 12, at 12. However, MPC notes this theory in just a few sentences and provides no case law in support of its argument that the Court can confer federal question jurisdiction based on a state law damages request.

Accordingly, MPC has failed to meet its burden to show that this Court has federal question jurisdiction over UMMS' claims. And because the Court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," remand is appropriate here. *See Goucher Coll.*, 541 F. Supp. 3d at 642.

### D.    Attorney's Fees

UMMS requests attorney's fees pursuant to 28 U.S.C. § 1447(c), arguing that "MPC had no reasonable basis to believe that this action implicates any substantial question of the

17

interpretation or application of any federal law." ECF 10-1, at 22. MPC opposes this request, arguing that "the plain language of the Complaint alleging violations of federal law and seeking relief under federal law . . . renders MPC's notice of removal objectively reasonable." ECF 12, at 18–19.

The Court will deny attorney's fees here. UMMS does not suggest—and there is no evidence reflecting—that MPC removed this case for the purpose of prolonging litigation or increasing costs born by UMMS. *Cf. Johnson v. State Farm Mut. Ins. Co.*, Civ. No. DKC-17-2347, 2017 WL 5668075, at *1 (D. Md. Nov. 27, 2017) (denying attorney's fees on a motion to remand because, among other reasons, there was no evidence that the defendant removed the case "for the purpose of prolonging litigation and imposing costs on the opposing party"). The Court also recognizes that UMMS's complaint references a number of federal laws and, as such, does not find that MPC lacked an objectively reasonable basis for removal. "Awarding attorney's fees in removal cases is rare, with many courts in this district denying attorney's fees even when granting motions to remand." *Hyatt v. Johns*, Civ. No. GJH-16-2912, 2017 WL 2937940, at *4 (D. Md. July 10, 2017). Accordingly, the Court will deny the request for attorney's fees.

## IV.  **CONCLUSION**

For the foregoing reasons, UMMS's motion to remand, ECF 10, is GRANTED except as it relates to attorney's fees. This case is REMANDED to state court and MPC's motion to dismiss, ECF 2, is DENIED as moot.

A separate implementing order will issue.

Dated: <u>March 18, 2026</u>

<u>                    /s/                    </u>
Brendan A. Hurson
United States District Judge